Judge Underwood,
delivered the opinion of the court.
Wolfe having obtained a judgment at the May term, 1823, against Chaddie, for $56 and costs of suit, sued out execution which was returned, “stayed by order of plaintiff’s attorney.” A second execution issued, endorsed by the clerk, “this execution is to he discharged by the payment of the costs.” The third execution with the same endorsement was levied, and upon a venditioni exponas, a replevin bond taken for *669 tlie costs alone. The fourth execution which issued' on the replevin bond was levied, and the fourth vr.nclitioni exponas was returned that the property had not been sold for want of time. The fourth venditioni ex-ponas, bears date 16th April; 1828.
Party, whose ^ motioMhi success of which detestimohy'en. pays, if he be not alreadyin ^edt’o^otice; otherwise if the ^ depend upon the record,
On the 20th February, 1828, -the court entered an order, giving leave to Wolfe to sue out execution for the full amount of the judgment rendered in May,. 1823, without quashing the replevin bond which liad been taken for the costs, and without paying any attention to the endorsement on the former executions, that the costs only were to be collected, it does not appear that Chad die had any notice of this proceeding, and he has prosecuted a writ of error to reverse the order of February, 1828.
Whenever any order is desired by either party to any cause which may materially affect the rights of his adversary, and the propriety of making such order, depends upon extrinsic evidence, and is not justified by the face of the record, the party against whom it is to operate should have notice of the motion, and an opportunity should be afforded him to counteract it by proof. There should be no exception to this rule, where the parties are out of court when the motion is made, as is the case here. It might have been in the power of Chaddie to prove that all of the judgment had been paid, except the costs. He might have shewn that the clerk properly made the endorsement,/that the costs only were to be collected. An opportunity at' least should have been afforded him to prove payment, or to sustain the endorsement if he could. But again, it was obviously erroneous to give an execution for the whole amount of the judgment, leaving the replevin bond for the costs in full force. By such a course, the defendant in error might obtain a double satisfaction for part of his demand. The clerk, sensible of the injustice likely to result, when lie issued the execution for the full amount of the original judgment, according to the order of the court, endorsed a credit upon it for all the costs, except forty five cents and a half, the fee for issuing the execution so endorsed. Thus it seems that the court, by giving á new execution for the whole jqdgment. and leaving the replevin *670 bond in force, laid the foundation of a double set of executions, contrary to all just practice, and without tiie sanction of law*
Chupczc and T. T. Crittenden, for plaintiifi
We cannot suppress the remark, that we hare seldom, if ever examined a record which exhibits so man/ intrinsic evidences of negligence in omitting to execute in due time the process of the law. The costs which originally amounted to $7 35 cents only, bad grown to a sum exceeding .§10, near ten of which were bearing interest at the date of the jast venditioni exponas, which the sheriff still had not'time to execute, although it was the fourth which had issued. It moreover seems, after the levy of the execution issued for the full debt by order of court, that there had been two venditioni expon-ises issued before the proceedings were arrested by supersedeas. Thus the whole record, which is a short one, exhibits seven venditioni caponases, many of which the sheriff of the small county of Bullitt, could not find time to act upon, and in addition to' these eight executions, from first to last, have swelled the costs, and the clerk states, that a ninth has issued, but has not been returned, it would be well for the circuit courts to enforce, by applying the proper corrective, a more diligent discharge of duty from those entrusted with the execution of legal process, than has been observed in the present case.
The order of the February term, 1828, awarding execution for the full amount of the original judgment, is-reversed with costs.